UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| CITY OF BALTIMORE, *ex rel.* Ebony Thompson,<br><br>*Plaintiff*,<br><br>v.<br><br>DRAFTKINGS INC., a Nevada corporation, and FLUTTER ENTERTAINMENT PLC d/b/a FANDUEL INC., an Irish corporation,<br><br>*Defendants*. | Case No. _____<br>(Removed from Baltimore City Circuit Court, Case No: C-24-CV-25-002683) |

## DEFENDANTS' NOTICE OF REMOVAL

Defendants DraftKings Inc. ("DraftKings")[1] and Flutter Entertainment plc d/b/a FanDuel, Inc.[2] ("Flutter") (collectively, "Defendants"), with reservation of all defenses and rights, hereby give notice to this Court under 28 U.S.C. §§ 1332, 1441(a), and 1446 that they are removing the above-entitled action from the Circuit Court for Baltimore City, Maryland (the "State Court") to the United States District Court for the District of Maryland, Northern Division ("Notice of Removal"). In support thereof, Defendants state as follows:

---

[1] By filing this notice of removal, DraftKings does not concede that the proper entity has been named and reserves the right to move for dismissal on this and other grounds.

[2] By filing this notice of removal, Flutter Entertainment does not concede that it is subject to the personal jurisdiction of the Court. In addition, "Flutter Entertainment plc d/b/a FanDuel, Inc." does not exist as an entity, let alone as an entity that operates an online sports gambling platform in Maryland. The licensed entity that operates an online sports gambling platform in Maryland is Betfair Interactive US LLC. Flutter Entertainment reserves the right to move for dismissal on these and other grounds.

1

## THE STATE COURT ACTION

1.     On April 3, 2025, Plaintiff Mayor & City Council of Baltimore ("Plaintiff") commenced this action against Defendants in the Circuit Court for Baltimore City, Maryland, Case No. C-24-CV-25-002683 ("State Court Action"), captioned *City of Baltimore, ex rel. Ebony Thompson v. DraftKings Inc., a Nevada corporation, and Flutter Entertainment PLC d/b/a/ FanDuel Inc., an Irish corporation*.

2.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Defendants in this action, along with the State Court docket sheet, are attached to this Notice as **Exhibit A** (Case Information Sheet), **Exhibit B** (Complaint), **Exhibit C** (Summons to DraftKings)**, Exhibit D** (Summons to Flutter), **Exhibit E** (State Court Action Docket Sheet)

3.     The Circuit Court for Baltimore City is located within the District of Maryland, Northern Division.  *See* 28 U.S.C. § 100(1).  This Notice of Removal is therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).

## SERVICE

4.     Plaintiff served the Summons and Complaint on DraftKings on April 8, 2025 and on Flutter on April 9, 2025.[3]

5.     A true and correct copy of the Proofs of Service are attached to this Notice as **Exhibit F** (DraftKings) and **Exhibit G** (Flutter).

---

[3] This Summons purports to serve "Flutter Entertainment plc d/b/a FanDuel, Inc." As stated above, such an entity does not exist. *See supra* n.2.  The entity Plaintiff served was Flutter Entertainment plc.

2

## TIMELINESS OF REMOVAL

6.  As no Defendant was served prior to April 8, 2025, Defendants have filed this notice of removal within the 30-day time period required by 28 U.S.C. §1446(b).

7.  A Notice to Clerk of Removal ("Notice to Clerk") has been filed with the Circuit Court for Baltimore City contemporaneously herewith. A copy of the Notice to Clerk is attached as **Exhibit H**.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

8.  The Complaint attempts to state claims for violations of Baltimore's Consumer Protection Ordinance ("CPO"), Baltimore City Code Art. 2, § 4. (Complaint ¶¶ 107-110.)

9.  Defendants operate online sportsbooks in Maryland. (*Id.* ¶¶ 1-3.)

10. Plaintiff alleges that Defendants "violate the CPO by:"

    a.  Using algorithms to target users with gambling offers;

    b.  Deploying misleading bets to encourage compulsive behavior;

    c.  Failing to disclose key terms of promotional offers;

    d.  Using user data to identify and target those with gambling disorders;

    e.  Sending messages to pressure users into betting;

    f.  Leveraging VIP programs to reward and retain gamblers; and

    g.  Not applying available technology to prevent targeting of problem gamblers.

(*Id.* ¶ 111.)

11. Defendants deny these allegations.

12. The Complaint seeks the maximum amount of statutory penalties available under the CPO for each violation of the CPO; injunctive relief mandating that Defendants cease

purportedly targeting certain gamblers; injunctive relief requiring Defendants to reform their platforms; and any other relief the Court deems proper. (*Id.* at Request for Relief.)

## REMOVAL BASED ON DIVERSITY JURISDICTION

13. "Diversity jurisdiction requires complete diversity of citizenship and an amount in controversy over $75,000." *Gainer v. Lynn*, Civil No. 25-907-BAH, 2025 WL 1068052, at *2 (D. Md. Apr. 9, 2025). This Court has original jurisdiction over this matter under 28 U.S.C. § 1332 and 28 U.S.C. § 1441 because it involves a controversy that exceeds the sum of seventy-five thousand dollars ($75,000) and because Plaintiff and all Defendants are citizens of different states.

### *Complete Diversity*

14. To establish diversity jurisdiction, "no defendant may be a citizen of the same state as any plaintiff." *Pebbles v. Corporate Hollywood et al.*, Case No. 25-cv-797-ABA, 2025 WL 1079533, at *1 (D. Md. Apr. 10, 2025).

15. For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

16. Plaintiff is a municipal corporation organized under Maryland law. Archives of Maryland, Session Laws Vol. 206, 256 (1796), https://msa.maryland.gov/megafile/msa/speccol/sc2900/sc2908/000001/000105/html/am105--256.html (last visited April 30, 2025); Md. Const. art. XI, § 9. Plaintiff is accordingly a citizen of the State of Maryland.

17. At the time the action was filed, DraftKings is a Nevada corporation headquartered in Boston, Massachusetts. (*See* Complaint ¶ 24 (alleging DraftKings is incorporated in Nevada and has its principal place of business in Boston, Massachusetts).)

18. At the time the action was filed, Flutter is an Irish corporation, with its principal place of business in Dublin, Ireland. (*See* Complaint ¶ 25 (alleging Flutter Entertainment is an Irish corporation with its principal place of business in Dublin, Ireland).)

19. Plaintiff and Defendants are, accordingly, citizens and residents of different states and complete diversity exists under 28 U.S.C. § 1332.[4]

*Amount in Controversy*

20. Plaintiff's Complaint fails to specify the amount of the money judgment it seeks, including whether that amount exceeds $75,000. (*See generally* Complaint.) This omission is in violation of the Maryland Rules and, in any case, does not deprive this Court of jurisdiction.

21. The Maryland Rules require Plaintiff's Complaint to either plead a specific sum of claimed damages or to provide a "general statement" that the amount sought exceeds $75,000. *See* Md. Rule 2-305 ("Unless otherwise required by law, . . . a demand for a money judgment that does not exceed $75,000 shall include the amount of damages sought," while "a demand for a money judgment that exceeds $75,000 shall not specify the amount sought, but shall include a general statement that the amount sought exceeds $75,000."). The Maryland Rules do not permit a plaintiff to try and "skirt federal jurisdiction" by omitting this statement, as Plaintiff has done here, "while simultaneously leaving open a path to a larger recovery at trial." *Brennan v. Stevenson*, Civil No. JKB-15-2931, 2015 WL 7454109, at *2 (D. Md. Nov. 24, 2015).

22. "If a complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds

---

[4] Betfair Interactive US LLC is wholly owned by FanDuel Group, Inc., which is a Delaware corporation with a principal place of business in New York. As an LLC, Betfair Interactive US LLC's citizenship is that of its parent/member corporation. *See Gen. Tech. Applications, Inc. v. Exro Ltda,* 388 F.3d 114, 121 (4th Cir. 2004). Accordingly, even if Plaintiff were to amend the Complaint to name the correct party (*see supra* n.2), complete diversity would remain.

$75,000." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (cleaned up). "Courts generally determine the amount in controversy by reference to the plaintiff's complaint." *Johnson v. Xerox Educ. Sols. LLC*, No. GJH-14-CV-15422, 2014 WL 5361302, at *3 (D. Md. Oct. 20, 2014) (citing *Wiggins v. North Amer. Equitable Life Assur. Co.*, 644 F.2d 1014, 1016–17 (4th Cir. 1981) ("Ordinarily the jurisdictional amount is determined by the amount of the plaintiffs original claim, provided that the claim is made in good faith.")).

23. Here, Plaintiff's allegations clearly establish, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1446(c)(2)(A).

24. *First*, by Plaintiff's own estimate in the Case Information Sheet it filed in the State Court, Plaintiff seeks more than $100,000 in civil penalties exclusive of "Attorney's Fees, Interest, or Court Costs." (*See* Ex. A at 2.)

25. *Second*, taking the allegations in the Complaint at face value, the preponderance of the evidence establishes that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1446(c)(2)(B).

26. In the Complaint, Plaintiff asserts that Defendants are liable for violating the CPO, Baltimore City Code Art. 2, § 4, and seeks civil penalties, injunctive relief, restitution, and disgorgement. (*See* Complaint ¶ 117.) Plaintiff contends that "[e]ach ping, enrollment, and retention in a VIP program, 'bonus bet,' or other promotion, and/or push notification directed to a person whom Defendants know, have reason to know, or suspect to be suffering from a gambling disorder is a separate violation of the CPO," as is "[e]ach misleading inducement that Defendants used to generate new users." (*Id.* ¶¶ 114-15.)

27. Statutory damages can be aggregated to determine the amount in controversy for diversity jurisdiction. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 735 (4th Cir. 2009)

("Statutory liquidated damages are properly includable in the calculation of the jurisdictional amount here[.]"); *Parker v. Goldman Sachs Mortg. Co. Ltd. P'ship*, 596 F. Supp. 3d 559, 566 (D. Md. 2022) (explaining that aggregated statutory penalties satisfy the amount in controversy requirement for removal purposes) (citing *Sayre v. Westlake Servs., LLC*, 2015 WL 4716207, at *7 (D. Md. Aug. 7, 2015)); *Winner v. Kelco Fed. Credit Union*, Civil Action No. ADC-20-3420, 2021 WL 5882918, at *11 (D. Md. Dec. 9, 2021) (exercising diversity jurisdiction and affirming that the defendant's violations of various West Virginia state laws and corresponding statutory damages amounted to $76,000).

28. The CPO, under which Plaintiff sues, provides for civil penalties up to $1,000 per violation. CPO § 4-3(a). Each violation is a separate offense, and each day of offending behavior is considered a separate violation. CPO § 4-3(b)-(c).

29. Plaintiff alleges that Maryland residents bet more than $457 million on Defendants' platforms in January 2025 (Complaint ¶ 3), and that "[m]any" of those bettors are in Baltimore, "by far Maryland's largest city," (*id.* ¶¶ 2-3).

30. Plaintiff alleges that, in Maryland, more than 20% of "online sports bettors showed signs of disordered gambling." (*Id.* ¶ 32.)

31. In light of the foregoing, Plaintiff's Complaint alleges more than 75 separate violations of the CPO. Accordingly, the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1446(c)(2)(B).

32. *Third*, Plaintiff seeks two forms of injunctive relief that would require Defendants to reform their platforms and cease the alleged targeting of certain consumers. (*See* Complaint at Request for Relief.) "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v.*

*Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); *see also* 28 U.S.C. § 1446(c)(2)(A)(i) (notice of removal may assert amount in controversy if "nonmonetary relief" is sought). "That value is measured from either the perspective of the plaintiff or the defendant." *Clark v. DocuSign, Inc.*, Civil Case No. 1:22-cv-02892-SAG, 2023 WL 2330698, at *2 (D. Md. Mar. 2, 2023); *see also Liberty Mut. Fire Ins. Co. v. Hayes*, 1997 WL 568673, at *3 (4th Cir. Sept. 15, 1997) (determining the amount in controversy by considering "the potential pecuniary effect that a judgment would have on either party to the litigation"); *Stevens v. U.S. Bank Nat. Ass'n*, Civil Action No. DKC 15-1780, 2015 WL 5201578, at *2 (D. Md. Sept. 4, 2015) ("[T]he relevant inquiry is whether the 'direct pecuniary value' of the right the plaintiff seeks to enforce, or the cost to the defendant of complying with any prospective equitable relief exceeds $75,000.") (cleaned up).

33. Plaintiff alleges that Defendants' actions have "cause[d] harm to the City" and to "Baltimore citizens." (Complaint ¶ 94.) The Complaint also alleges that "Marylanders wagered more than $5 billion in fiscal year 2024" and "$3.7 billion in the first half of fiscal year 2025" on sports betting, with a significant portion of those wagers coming from Baltimoreans. (*Id.* ¶ 2.) Moreover, it asserts that "in January 2025 alone, Maryland bettors placed more than $457 million in combined bets on the [Defendants'] platforms[.]" (*Id.* ¶ 3.) Accordingly, taking the allegations of the Complaint as true for purposes of this Notice only, the value of the object of the litigation—for Defendants to reform their business practices with respect to an alleged 20% of a multi-billion-dollar market—exceeds $75,000.

34. Without conceding any merit to the Complaint's allegations or causes of action, the amount in controversy satisfies this jurisdictional threshold.

## VENUE

35. The State Court Action is being removed from the Circuit Court for Baltimore City, Maryland. As such, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

## RESERVATION OF RIGHTS AND DEFENSES

36. By filing this Notice of Removal, Defendants do not waive any defenses that may be available and reserve all such defenses. Defendants do not concede that Plaintiff states any claim upon which relief can be granted, or that Plaintiff is entitled to any relief of any nature.

37. If any challenges to the propriety of the removal of this action arise, Defendants respectfully request the opportunity to present oral argument and/or additional evidence.

## COMPLIANCE WITH 28 U.S.C. § 1446

38. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on Defendants in the State Court Action are filed with this Notice of Removal. (*See* Exs. A to D.)

39. All Defendants have joined this Notice of Removal.

40. Defendants will file the Notice to Clerk with the Clerk of the Circuit Court for Baltimore City contemporaneously with this filing pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendants give notice that the State Court Action is removed from the Circuit Court for Baltimore City to this Court.

Dated: May 7, 2025

Respectfully Submitted,

**COBLENTZ PATCH DUFFY & BASS LLP**

*/s/ Richard R. Patch*
Richard R. Patch*
Clifford E. Yin*
Christopher J. Wiener*
Sarah E. Peterson*
One Montgomery Street, Suite 3000

San Francisco, California 94104
Telephone: (415) 391-4800
ef-rrp@cpdb.com
ef-cey@cpdb.com
ef-cjw@cpdb.com
ef-sep@cpdb.com

*pro hac vice* motions forthcoming

**BAKER, DONELSON, BEARMAN, CALDWELL, & BERKOWITZ, PC**

<u>/s/ Tonya Kelly Cronin</u>
Ty Kelly Cronin (Bar No. 27166)
Alison C. Schurick (Bar No. 19770)
Michael A. Brown (Bar No. 20814)
100 Light Street, 19th Floor
Baltimore, MD 21202
Telephone: (410) 862-1134
tykelly@bakerdonelson.com
aschurick@bakerdonelson.com
mbrown@bakerdonelson.com

*Attorneys for DraftKings Inc.*

<u>/s/ Michael X. Imbroscio</u>
Michael X. Imbroscio (Bar No. 20510)
Phyllis A. Jones*
Gary M. Rubman*
Andrew P. Stanner*
Amber M. Charles*
COVINGTON AND BURLING, LLP
One CityCenter
850 10th Street NW
Washington, D.C., 20001
(202) 662-6000
mimbroscio@cov.com
pajones@cov.com
grubman@cov.com
astanner@cov.com
acharles@cov.com

*pro hac vice* motions forthcoming

*Attorneys for Flutter Entertainment plc*

## CERTIFICATE OF SERVICE

I certify that on May 7, 2025, I electronically filed the foregoing document (including exhibits) via CM/ECF, and that the foregoing document was served upon the following person(s) via email and Certified Mail:

>Ebony M. Thompson
>City Solicitor
>Sara Gross
>Chief, Affirmative Litigation Division
>Thomas P.G. Webb
>Deputy Chief, Affirmative Litigation Division
>**BALTIMORE CITY LAW DEPARTMENT**
>City Hall, Room 101
>100 North Holliday Street
>Baltimore, Maryland 21202
>ebony.thompson@baltimorecity.gov
>sara.gross@baltimorecity.gov
>thomas.webb@baltimorecity.gov
>
>Adam J. Levitt
>Daniel R. Schwartz
>Daniel R. Ferri
>Eaghan Davis
>Rebecca Trickey
>**DICELLO LEVITT LLP**
>Ten North Dearborn Street, Sixth Floor
>Chicago, Illinois 60602
>alevitt@dicellolevitt.com
>dschwartz@dicellolevitt.com
>dferri@dicellolevitt.com
>edavis@dicellolevitt.com
>rtrickey@dicellolevitt.com
>
>*Attorneys for Plaintiff*

                                                                                                 /s/ Tonya Kelly Cronin
                                                                                                 Tonya Kelly Cronin