## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| CITY OF BALTIMORE, *ex rel.* Ebony Thompson,<br><br>*Plaintiff*,<br><br>      v.<br><br>DRAFTKINGS INC., a Nevada corporation, and FLUTTER ENTERTAINMENT PLC d/b/a FANDUEL INC., an Irish corporation,<br><br>*Defendants*. | Case No.  1:25-cv-01487-SAG<br><br>Hon. Stephanie A. Gallagher |

## <u>DEFENDANTS' OPPOSITION TO CITY OF BALTIMORE'S MOTION TO REMAND</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................1

LEGAL STANDARD ................................................................................................................2

ARGUMENT ..............................................................................................................................4

    I.     THE CITY'S CLAIMS ARE UNRELATED TO ANY PENDING
          PROCEEDINGS OR ORDERS OF STATE ADMINISTRATIVE
          AGENCIES..............................................................................................................5

    II.    THE CITY'S CLAIMS DO NOT REQUIRE THE DISRUPTION OF A
          COMPLEX STATE REGULATORY SCHEME. ....................................................9

          A.    The City Fails to Identify Any Regulation Which Would Be
                Disrupted.......................................................................................................9

          B.    There Is No Bright-Line Rule Requiring Abstention in Gaming
                Cases. ..........................................................................................................12

          C.    *Burford* Does Not Apply Simply Because the Case Involves a
                Regulated Industry. ....................................................................................14

    III.   THE CITY ASSERTS STRAIGHTFORWARD CONSUMER
          PROTECTION CLAIMS THAT DO NOT WARRANT *BURFORD*
          ABSTENTION. ......................................................................................................17

CONCLUSION..........................................................................................................................18

REQUEST FOR HEARING......................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Pub. Serv. Comm'n v. S. Ry. Co.*,
  341 U.S. 341 (1951)................................................................................................11

*AmTote Int'l, Inc. v. PNGI Charles Town Gaming, LLC*,
  66 F. Supp. 2d 782 (D. W. Va. 1999) ....................................................................10

*Antar v. BetMGM, LLC*,
  No. 24-1364, 2025 WL 1219316 (3rd Cir. Apr. 28, 2025).......................................9

*Assanah-Carroll v. L. Offs. of Edward J. Maher, P.C.*,
  480 Md. 394 (2022) ..................................................................................................5

*Ayres v. Ocwen Loan servicing, LLC*,
  129 F. Supp. 3d 249 (D. Md. 2015) ........................................................................18

*Beyer, et al. v. DraftKings, Inc., et al.*,
  No. 1:25-cv-01336 (N.D. Ill. 2025) ........................................................................17

*Borough of Catasauqua v. Darwin Nat'l Assurance Co.*,
  No. 11-CV-03855, 2012 WL 1071224 (E.D. Pa. Mar. 30, 2012).............................7

*Brooks v. Chicago Downs Ass'n*,
  791 F.2d 512 (7th Cir. 1986) ....................................................................................9

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943)........................................................................................ *passim*

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
  No. 3:10-CV-191-WKW, 2011 WL 1216296 (M.D. Ala. Mar. 31, 2011)...............9

*Centennial Life Ins. Co. v. Poston*,
  88 F.3d 255 (4th Cir. 1996) ....................................................................................16

*Chambers v. King Buick GMC, LLC*,
  43 F. Supp. 3d 575 (D. Md. 2014)...............................................................15, 16, 18

*Chun v. State of N.Y.*,
  807 F. Supp. 288 (S.D.N.Y. 1992)..........................................................................13

*Country Vintner of North Carolina LLC v. E&J Gallo Winery, Inc.*,
  461 Fed. App'x 302 (4th Cir. 2012) .................................................................15, 16

*Courthouse News Serv. v. Harris,*
  No. ELH-22-0548, 2022 WL 17850125 (D. Md. Dec. 22, 2022) ...................................12, 16

*Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley, Pa.,*
  385 F. App'x 135 (3d Cir. 2010) ...............................................................................................7

*Educ. Servs., Inc. v. Maryland State Bd. for Higher Educ.,*
  710 F.2d 170 (4th Cir. 1983) ............................................................................................11, 12

*Gov't Emps. Ins. Co. v. Uptown Health Care Mgmt., Inc.,*
  945 F. Supp. 2d 284 (E.D.N.Y. 2013) .....................................................................................7

*Haak Motors LLC v. Arangio,*
  670 F. Supp. 2d 430 (D. Md. 2009) .....................................................................................5, 6

*Johnson v. Collins Ent. Co.,*
  199 F.3d 710 (1999) ........................................................................................................ *passim*

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  572 U.S. 118 (2014) ..................................................................................................................2

*Little v. Mayor & City Council of Ocean City,*
  No. ELH-18-360, 2019 WL 4689238 (D. Md. Sept. 26, 2019).................................................8

*Martin v. Stewart,*
  499 F.3d 360 (4th Cir. 2007) .......................................................................................... *passim*

*Mason v. Mach. Zone, Inc.,*
  140 F. Supp. 3d 457 (D. Md. 2015).........................................................................................9

*Mattera v. Baffert,*
  100 F.4th 734 (6th Cir. 2024) ..................................................................................................9

*McGee v. Cole,*
  993 F. Supp. 2d 639 (S.D.W. Va. 2014)................................................................................16

*Metro Riverboat Assocs., Inc. v. Bally's La., Inc.,*
  142 F. Supp. 2d 765 (E.D. La. 2001)......................................................................................13

*MLC Auto., LLC v. Town of S. Pines,*
  532 F.3d 269 (4th Cir. 2008) ..................................................................................................14

*Murray v. Midland Funding, LLC,*
  No. JKB-15-0532, 2015 WL 3874635, at *5 (D. Md. Jun 23, 2015).................................6, 16

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
  491 U.S. 350 (1989)......................................................................................................... *passim*

iii

*Pulte Home Corp. v. Montgomery Cnty., Md.*,
    No. GJH-14-3955, 2015 WL 4430588 (D. Md. July 17, 2015)............................................18

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996)..........................................................................................................2, 11

*Ramirez v. LVNV Funding*,
    No. 24-cv-2335-ABA, 2025 WL 1665388 (D. Md. June 12, 2025)....................................18

*Salvato v. Harris*,
    No. 21-12706 (FLW), 2022 WL 1224962 (D.N.J. Apr. 26, 2022)........................................7

*Shelton v. Klima, Peters & Daly P.A.*,
    No. DLB-24-1068, 2025 WL 1311731 (D. Md. May 6, 2025) ...........................................18

*Town of Nags Head v. Toloczko*,
    728 F.3d 391 (4th Cir. 2013) .......................................................................................12, 18

*Tsoras v. Manchin*,
    431 F. App'x 251 (4th Cir. 2011) ........................................................................................8

*Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*,
    431 F. Supp. 3d 698 (D. Md. 2020) ..................................................................................18

*Webb v. Carrington Mortg. Servs. LLC*,
    No. SAG-24-1950, 2025 WL 213950 (D. Md. Jan. 16, 2025) ...........................................18

*Wenner v. Texas Lottery Comm'n*,
    123 F.3d 321 (5th Cir. 1997) ..............................................................................................9

*Ziady v. Curley*,
    396 F.2d 873 (4th Cir. 1968) ............................................................................................10

**Statutes & Rules**

28 U.S.C. § 1332....................................................................................................................1

Consumer Protection Ordinance § 4-1..................................................................................5

Md. Code, State Gov't § 10-222(c) ......................................................................................12

S.C. Code Ann. § 12-21-2791...............................................................................................13

**Other Authorities**

Maryland Constitution, Article XI-A, § 3...............................................................................5

## INTRODUCTION

DraftKings Inc. and Flutter Entertainment PLC (collectively, "Defendants")[1] removed this case to federal court under 28 U.S.C. § 1332 on the basis of diversity jurisdiction. The City concedes that diversity jurisdiction is proper but nonetheless moved to remand. Its sole basis is the rarely used abstention doctrine established by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *Burford* abstention, however, applies only in a narrow category of cases in which federal court intervention may disrupt a state's effort to establish coherent public policy through the administration of a comprehensive regulatory scheme. This is not such a case. Rather, it is a straightforward consumer protection action brought under a *municipal* ordinance against *out-of-state* defendants.

The City relies on a selective reading of authority to create a bright-line rule which does not exist. In its telling, because Defendants operate sports betting platforms regulated by Maryland's state licensing scheme—and allegedly engaged in deceptive conduct towards consumers—this case implicates important state regulatory interests and therefore abstention is mandated. But there is no risk of federal overreach here and the City does not seek to enforce (or challenge) any state gaming regulation. Nor is there any ongoing state judicial or administrative proceeding with which this action would interfere. To justify the extraordinary act of relinquishing its jurisdiction, a complaint must confront the Court with far more than a defendant participating in a regulated industry.

---

[1] By filing this Opposition, neither Defendant concedes that the proper entity has been named and reserves the right to move for dismissal on this and other grounds. The City already has agreed, at least with respect to Flutter Entertainment PLC, to file an amended complaint to correct the improper defendant. *See* ECF No. 19-1 at 2 n.1.

Remarkably, the City contends that its own suit might interfere with Maryland's comprehensive regulatory scheme because Defendants are "likely to rest some of their defense" on their "adherence" to Maryland law.  (The City's Motion to Remand (ECF No. 19-1) ("Motion") at 7.)  The City does not cite *any* case endorsing *Burford* abstention based on the plaintiff's belief that a defendant will make such an argument.  If this Court were to adopt the City's position, it would transform *Burford* abstention from an "'extraordinary and narrow exception[]' to a federal court's duty to exercise the jurisdiction conferred on it" into an utterly routine reason to decline federal jurisdiction any time a party could plausibly raise state-law defenses.  *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (citation omitted).  After all, there is nothing extraordinary or unusual about a defendant arguing that it cannot be held liable under a consumer-protection statute for conduct that fully complied with a carefully considered state regulatory regime—such arguments are the bread-and-butter of consumer protection litigation.

This is a standard consumer protection dispute that falls well within the federal judiciary's traditional authority to adjudicate cases involving citizens of different states.  The City's Complaint proceeds under a single consumer protection claim that federal courts in Maryland regularly hear and decide under analogous circumstances.  Accordingly, Defendants respectfully request that the City's Motion be denied.

## LEGAL STANDARD

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon by them by Congress."  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).  The Court's "obligation to hear and decide cases within its jurisdiction is virtually unflagging."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (cleaned up).

Subject to that duty, the Supreme Court has recognized an "extraordinary and narrow exception" permitting courts to abstain from exercising their jurisdiction.  *Quackenbush*, 517

U.S. at 728; *see also New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSI*") (affirming the principle that "abstention is permissible, and it remains the exception, not the rule.") (cleaned up).  First articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), "the *Burford* [abstention] doctrine justifies the dismissal of a federal action in a narrow range of circumstances." *Martin*, 499 F.3d at 364 (cleaned up).  Therefore, "a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies" in only two circumstances. *NOPSI,* 491 U.S. at 361.

*First*, "when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* at 361 (cleaned up).  *Second*, when "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id*.  "The Supreme Court has consistently refused to abstain under *Burford* when neither of these criteria were met," and the Fourth Circuit has held that district courts abuse their discretion by permitting *Burford* abstention in cases where these criteria are not satisfied.  *Martin*, 499 F.3d at 364-65.

The touchstone of *Burford* abstention is its narrowness.  "The Supreme Court has *never* allowed judicial abstention to be a license for free-form *ad hoc* judicial balancing of the totality of state and federal interests in a case." *Id.* at 364 (emphasis in original).  While "[c]ourts must balance the state and federal interests to determine whether the importance of difficult state law questions or the state interest in uniform regulation *outweighs* the federal interest in adjudicating the case at bar[,] . . . [t]his balance only rarely favors abstention." *Id.* (quoting *Quackenbush*, 517 U.S. at 728).  As the Fourth Circuit observed in *Martin*, "both the Supreme Court and this

court have specifically rejected the view that a strong state interest"—there, as here, regulation of gaming—"alone could justify *Burford* abstention."  *Id.* at 369 (citations omitted).

## ARGUMENT

At its core, the City contends that *Burford* abstention is required because their claim involves a municipal unfair trade practices ordinance being applied to a regulated industry. (Motion at 6.)  But that misses the mark.  The City's claims are unrelated to any pending "proceedings or orders of state administrative agencies" requiring the Court to act as an appellate body overseeing local matters like zoning and land use—the litmus test courts apply when considering *Burford* abstention.  *NOPSI*, 491 U.S. at 361.  While Defendants vigorously dispute the factual allegations in the Complaint ("Compl."), the City's claim presents a straightforward dispute—relating to advertising and trade practices—of precisely the type frequently litigated in federal court.  It implicates none of the narrow comity concerns raised by *Burford*, including that the federal court's involvement may disrupt a state regulatory scheme.

To the contrary, if the City's expansive approach to this limited doctrine were adopted, it would prevent federal courts from hearing all manner of ordinary disputes between diverse parties because the allegations tangentially relate to activities regulated by a non-party state agency.  Moreover, if the City ultimately succeeds on the merits, the result will be exactly the opposite of the statewide uniformity that *Burford* abstention is intended to achieve, as the limited territorial reach of the CPO necessarily means that a win by the City will result in *different* standards that will apply in one part of the state (Baltimore) than in the remainder of the state. Defendants have properly invoked this Court's diversity jurisdiction which should not be relinquished without a compelling legal basis.  No such legal basis is present here.

4

I.    **THE CITY'S CLAIMS ARE UNRELATED TO ANY PENDING PROCEEDINGS OR ORDERS OF STATE ADMINISTRATIVE AGENCIES.**

The City asserts a single claim for unfair and deceptive conduct under its local Consumer Protection Ordinance ("CPO").  The City enacted the CPO in 2023, more than two years after sports betting was legalized—with overwhelming support by Maryland voters and nearly unanimous bipartisan support in the General Assembly—and almost a year after sports betting launched throughout Maryland.  The CPO adopts most of its key terms and definitions verbatim from the Maryland Consumer Protection Act ("MCPA").  *See, e.g.*, CPO, § 4-1.  Unlike the MCPA, however, the CPO must be applied only *locally*—without significant extraterritorial impact throughout Maryland—or else it will violate the Maryland Constitution.  *See* Maryland Constitution, Article XI-A, § 3 ("Mayor of Baltimore and City Council of the City of Baltimore or the County Council of said County, subject to the Constitution and Public General Laws of this State, shall have full power to enact *local laws . . .*") (emphasis added); *Assanah-Carroll v. L. Offs. of Edward J. Maher, P.C.*, 480 Md. 394, 424 (2022).

Despite the clear purpose of *Burford* abstention, the City entirely fails to articulate how a decision in this case would require the Court to operate as a quasi-appellate body over any state administrative proceeding.  Courts repeatedly have noted that *Burford* abstention rests on concerns of comity and the doctrine seeks to avoid interjecting federal courts as the appellate division of state agencies.  Therefore, courts have cautioned that *Burford* abstention is "inapplicable" where the "case does not involve the proceedings or orders of a [state] administrative agency," but instead simply involves claims that "require the application of well-settled law."  *Haak Motors LLC v. Arango*, 670 F. Supp. 2d 430, 434 (D. Md. 2009); *see also NOPSI*, 491 U.S. at 361 (defining the *Burford* doctrine to mean that "a federal court sitting in

equity must decline to interfere with the *proceedings* or *orders* of state administrative agencies" under certain limited conditions) (emphases added).

For example, in *Murray v. Midland Funding, LLC*, the court declined to remand the bulk of a consumer protection case that had been removed under the Class Action Fairness Act, holding that *Burford* abstention was inappropriate. No. JKB-15-0532, 2015 WL 3874635, at *5 (D. Md. Jun 23, 2015). Although the plaintiff raised issues arising in a regulated area— consumer debt collection—and had initially challenged state court judgments, the court retained jurisdiction over claims brought under the MCPA and related laws. *Id.* at *4–5. It found the relief sought did not implicate any state policy issues, holding that the case did not require interpreting unsettled state law, and there were no "state administrative processes . . . or orders that could be jeopardized by proceeding to adjudication . . ." on the relevant counts. *Id.* at *5 (citations omitted). Indeed, the court emphasized that it "is largely thought that *Burford* abstention applies only in the context of state administrative processes." *Id.* It thus declined to remand the case on abstention grounds.

This case does not involve any pending proceedings of a Maryland administrative agency. The City does not challenge the validity, sufficiency, or administration of any agency decision, of Maryland's sports betting regulations, or the actions of any regulators. There is no contention that the regulatory framework itself is flawed or requires judicial intervention. Nor is there any prior or concurrent enforcement action by Maryland regulators concerning any of the conduct at issue in this case. As such, the City's claim does not present a situation where federal adjudication would interfere with state policymaking or administrative review, rendering *Burford* abstention "inapplicable." *Haak Motors*, 670 F. Supp. 2d at 434.

Here, the question of whether Defendants' practices were allegedly "unfair" or "deceptive" under the CPO—like in every consumer protection case—can be easily addressed by the Court without raising comity concerns.  Federal courts are fully capable of deciding—and routinely do decide—whether conduct violates consumer protection laws, even when it touches on a regulated industry.  The City's Motion conflates that routine application of the CPO, with the question of Defendants' adherence to the State's regulatory scheme.  Motion at 7–8.  But "[t]o implicate the sort of technical, complex regulatory scheme to which *Burford* abstention is usually applied, the action must challenge the scheme itself, rather than just actions taken under color of the scheme.  This case falls within the latter category—Plaintiffs are not challenging the validity of the gambling regulations but rather the application of the rules to the Games." *Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley, Pa.*, 385 F. App'x 135, 144 (3d Cir. 2010) (citations omitted).

Federal courts across the country have consistently declined to abstain in materially similar circumstances.  *See, e.g.*, *Gov't Emps. Ins. Co. v. Uptown Health Care Mgmt., Inc.*, 945 F. Supp. 2d 284, 290–91 (E.D.N.Y. 2013) (no *Burford* abstention where plaintiffs "challenge[d] [the defendant's] fraudulent conduct, rather than New York's regulatory scheme"); *Borough of Catasauqua v. Darwin Nat'l Assurance Co.*, No. 11-CV-03855, 2012 WL 1071224, at *5 (E.D. Pa. Mar. 30, 2012) (no *Burford* abstention where plaintiffs only alleged a violation of insurance conduct rules, not the underlying insurance regulatory scheme); *Salvato v. Harris*, No. 21-12706 (FLW), 2022 WL 1224962, at *7 (D.N.J. Apr. 26, 2022) (no *Burford* abstention where the plaintiff was "challenging Defendant's actions in connection with the [state statute], not the [statute] itself").

The Fourth Circuit itself has taken the same view. In *Martin*—binding Fourth Circuit authority given short shrift by the City (Motion at 10 n.13)—the court rejected *Burford* abstention in a case challenging South Carolina's gaming laws. *Martin*, 499 F.3d at 365. As the Fourth Circuit noted, *Burford* did not apply because "which video poker machines are prohibited by statute" was an inquiry that "hardly involve[d] a *difficult* state law question." *Id*. at 367–68 (emphasis in original).

The City's flawed reliance on *Burford* is brought into sharp focus by analyzing an instance in which the doctrine *was* found to apply. In *Tsoras v. Manchin*, the Fourth Circuit affirmed the district court's abstention where a plaintiff *directly challenged* a state administrative agency's denial of his gaming license. 431 F. App'x 251 (4th Cir. 2011). After receiving a full administrative hearing, the plaintiff *bypassed the state court appeal process* and filed a federal action under Section 1983, inviting the federal court to second guess a final agency determination. *Id*. at 252. The Fourth Circuit concluded that allowing such a challenge would fracture the state's coherent licensing framework and disrupt its regulatory scheme, precisely the kind of interference *Burford* abstention is designed to prevent. *Id*. at 253–54.

None of those concerns are present here. This case involves no agency decision, no bypassed administrative appeal, and no challenge to state policymaking. The City is not appealing or reviewing a regulatory action—it is pursuing a stand-alone consumer deception claim under the CPO.[2] Unlike *Tsoras*, which directly implicated the State's sovereign licensing

---

[2] The Fourth Circuit has applied *Burford* in "state and local land use and zoning cases." *Little v. Mayor & City Council of Ocean City*, No. ELH-18-360, 2019 WL 4689238, at *21 (D. Md. Sept. 26, 2019) (collecting Fourth Circuit cases). These are the "classic examples of situations in which the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id*. (cleaned up). None of those concerns are implicated here. This case does

authority and required a federal court to act as an administrative appellate body, this case has no bearing on Maryland's processes for issuing or enforcing sports betting licenses.

In short, the City is not asking the Court to invalidate, reinterpret, or even *apply* state policy around gaming licensing. The City is also not challenging any action, decision, or ruling by a state administrative body. Its claims, however flawed they may be, ask only whether Defendants violated a consumer protection law—a question federal courts are well-equipped to answer and routinely resolve. As such, *Burford* is "inapplicable."

## II.    THE CITY'S CLAIMS DO NOT REQUIRE THE DISRUPTION OF A COMPLEX STATE REGULATORY SCHEME.

### A.    The City Fails to Identify Any Regulation Which Would Be Disrupted.

It is also not enough, for the purposes of *Burford* abstention, that the State of Maryland has enacted a regulatory framework governing gaming. It is undisputed, of course, that Maryland regulates sports betting, as do all states that have legalized it. Nor is it contested that Maryland prohibits certain conduct by licensed operators. (Compl. at 7.) But the mere fact that a case "implicat[es] a state's gambling regime," (Motion at 9), and the mere existence of those regulations, does not support *Burford* abstention.[3]

---

not involve land use, zoning, permitting, or any matter of local governance traditionally reserved to state or municipal interpretation.

[3] Federal courts routinely resolve questions of state law implicating state regulations of legalized gaming. *See, e.g.*, *Antar v. BetMGM, LLC*, No. 24-1364, 2025 WL 1219316 (3rd Cir. Apr. 28, 2025) (consumer protection and negligence claims by patron against casino owner); *Mattera v. Baffert*, 100 F.4th 734 (6th Cir. 2024) (suit for legal and equitable relief against racetrack operator); *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321 (5th Cir. 1997) (claim seeking equitable relief against state lottery commission); *Brooks v. Chicago Downs Ass'n*, 791 F.2d 512, 513–14 (7th Cir. 1986) (denial of injunction prohibiting race track operator from excluding plaintiff); *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457 (D. Md. 2015) (claim against mobile virtual casino game operator under consumer protection law); *Bussey v. Macon Cnty. Greyhound Park, Inc.*, No. 3:10-CV-191-WKW, 2011 WL 1216296 (M.D. Ala. Mar. 31, 2011) (claim that defendants operated electronic bingo machines in violation of state law); *AmTote Int'l, Inc. v.*

While the City includes a lengthy overview of Maryland's statutory and regulatory framework governing sports betting (Motion at 4-7), it offers no explanation as to why that framework is relevant to the remand requested here.  Instead, the City asserts that it *has* claims and that Maryland *has* a regulatory scheme, without demonstrating how federal adjudication of its claims—which amount to an ordinary consumer protection dispute—would interfere with that scheme.[4]  Indeed, only two of the 117 numbered paragraphs of the City's Complaint even reference a provision of the State's regulatory regime, and neither of these paragraphs form the basis for the City's claim.  (*See* Compl. (ECF No. 1-4) ¶¶ 95, 117.)  As the Supreme Court has held, *Burford* abstention is not warranted "whenever there exists [a complex state administrative process], or even in all cases where there is a 'potential for conflict' with state regulatory law or policy."  *NOPSI,* 491 U.S. at 362 (citation omitted).  A federal court's consideration of a state regulatory scheme in the greater context of the case is insufficient to justify abstention.  If it were otherwise, the doors to federal courts would be shut for a vast range of otherwise routine cases involving out-of-state businesses engaged in regulated industries (*see infra* Section III.A. n.3)—defeating the purpose of diversity jurisdiction.[5]

---

*PNGI Charles Town Gaming, LLC*, 66 F. Supp. 2d 782 (D. W. Va. 1999) (claim arising out of provision of pari-mutuel betting).

[4] The City cites Fourth Circuit precedent noting the relevance of the *State*'s interest in ensuring "uniform treatment of essentially local problems."  Motion at 5–6 (citing *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008)).  But the City does not explain how enforcing a *municipal* ordinance promotes "uniform treatment" under a State regulatory regime.  Indeed, as noted above (Motion at 5–6), if the City succeeds on the merits, the result will be *less* uniformity throughout Maryland, as Defendants will be subject to different rules in Baltimore than in the rest of the state due to the fact that the CPO can only apply *locally* in Baltimore or would otherwise violate the Maryland Constitution.

[5] *See, e.g.*, *Ziady v. Curley*, 396 F.2d 873, 875 (4th Cir. 1968) (diversity jurisdiction ensures "access to an unbiased court to protect [a litigant] from parochialism if . . . forced into litigation in another state in which he was a stranger and of which his opponent was a citizen").

The City's argument that "federal adjudication" of this case might "unduly intrude upon complex state administrative processes" is remarkably thin.  *Martin*, 499 F.3d at 364.  It says only that Defendants are "likely to rest some of their defense" on their compliance with Maryland's comprehensive scheme regulating sports betting.  (Motion at 7.)  But the City does not cite a single case from any court endorsing *Burford* abstention based on one defense that might be raised in a lawsuit.  And, here, such a defense would *vindicate* Maryland's comprehensive and uniform regulation of sports betting against the misapplication of a municipal ordinance.

Indeed, the City fails to explain how judicial review "would [be] disrupt[ive of] state efforts to establish a coherent policy[.]"  *Martin*, 499 F.3d at 364.  First, to the extent that the City's claim "threatens the creation of a patchwork of inconsistent enforcement efforts," that risk is posed by the City's efforts to apply a *local* law to the same activity regulated by the State itself.  *Johnson v. Collins Ent. Co.*, 199 F.3d 710, 723 (1999).  Moreover, the Supreme Court has repeatedly emphasized that a critical factor in assessing the State's need for a "coherent policy" is whether the State has established a "centralized system of judicial review" by placing sole authority to resolve related issues with a single, specialized tribunal.  *NOPSI*, 491 U.S. at 360, 361; *see also Quackenbush*, 517 U.S. at 724 ("Texas also placed the authority to review the Commission's orders in a single set of state courts.") (quoting *Burford*, 319 U.S. at 326); *Ala. Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 348 (1951) ("Statutory appeal from an order of the Commission is . . . concentrated in one circuit court.").  The Fourth Circuit itself described the "salient feature" in *Burford* as the fact that '"the State had established its own elaborate review system' . . . by concentrating judicial oversight in specially authorized courts."  *Educ.*

11

*Servs., Inc. v. Maryland State Bd. for Higher Educ.*, 710 F.2d 170, 173 (4th Cir. 1983) (quoting

*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 815 (1976)).

Holding aside the fact that the City's complaint does *not* challenge any administrative

enforcement action, Maryland has not created such a centralized review system in a specialized

tribunal.  Maryland law authorizes a party to challenge a decision by the Maryland Lottery and

Gaming Control Commission in any circuit court throughout the State. Md. Code, State Gov't §

10-222(c).  Review in this Court will not disrupt any State effort to ensure "*uniform* application"

of those regulations.  *Martin*, 499 F.3d at 367 (emphasis in original); *see also Educ. Servs.*, 710

F.2d at 173 (rejecting *Burford* abstention because "Maryland state courts do not stand in any

special relationship of technical oversight or concentrated review" to regulations).

The City's failure to explain how resolution of this case would disrupt the uniformity of

Maryland's regulations is fatal to the City's argument.  At bottom, courts must be "[m]indful that

the abnegation of federal jurisdiction is a serious measure," such that even claims involving "a

sensitive area of [state] public policy" do "not merit abstention" without a concrete disruption of

a unified state process.  *Town of Nags Head v. Toloczko*, 728 F.3d 391, 393 (4th Cir. 2013).

"*Burford* does not require abstention simply because there is a potential for conflict with a state's

practice" in a regulated area.  *Courthouse News Serv. v. Harris*, No. ELH-22-0548, 2022 WL

17850125, at *24 (D. Md. Dec. 22, 2022).  It certainly does not require it here.

**B.    There Is No Bright-Line Rule Requiring Abstention in Gaming Cases.**

The primary thrust of the City's abstention argument relies on *Johnson v. Collins*

*Entertainment Company,* 199 F.3d 710 (4th Cir. 1999).  Like the State of South Carolina in *Martin*

*v. Stewart*, the City "misreads [*Johnson*]" in arguing that *Burford* abstention is warranted because

"regulation of gambling enterprises lies at 'the heart of the state's police power.'"  *Martin*, 499

F.3d at 369 (citation omitted); Motion at 8 (quoting *Johnson*, 199 F.3d at 715).  "But [the Fourth

Circuit] did not abstain in [*Johnson*] *because* it involved the regulation of that important state interest.  Abstention on that basis would be improper."  *Martin*, 499 F.3d at 369 (emphasis in original).  *Johnson* bears little resemblance to the City's Complaint.  It addressed sweeping injunctive relief that had already been granted despite pending proceedings in state court.  Moreover, *Johnson* was brought to federal court by means of federal question jurisdiction (not diversity) and involved the highly unusual circumstance of the Defendants—the same parties that removed to federal court—arguing that the federal court should then abstain under *Burford*.  199 F.3d at 732 (Luttig, J., concurring in judgment).

In *Johnson*, the Fourth Circuit held that abstention was warranted where the plaintiff's federal Racketeer Influenced Corrupt Organizations ("RICO") claims were entirely derivative of state-law interpretations of South Carolina's gaming statutes, including with respect to the permissible payout limits under South Carolina law.  *Id.* at 720 ("[T]he parties have contested the meaning of the $125 payout limit in S.C. Code Ann. § 12-21-2791").  In finding abstention appropriate, the court observed that the parties *contested the meaning of state gaming law* and that the district court "was necessarily trying to predict how the South Carolina Supreme Court would decide" that meaning.  *Id.*  Even though the plaintiffs dressed up their state law claims as RICO violations, the "[p]laintiffs' claims depend[ed] ultimately on alleged violations of state law for their predicate acts," *id.* at 722.  *See also id.* at 721 (describing "[f]ederal statutes such as RICO that incorporate state law violations as bases for federal relief" as "Trojan horses").[6]  The

---

[6] The two trial court decisions on which the City also relies, Motion at 9, are motivated by the same concerns.  *See Metro Riverboat Assocs., Inc. v. Bally's La., Inc.*, 142 F. Supp. 2d 765, 775 (E.D. La. 2001) (abstaining from resolving federal RICO claims predicated on state-law claims in light of ongoing state court proceedings); *Chun v. State of N.Y.*, 807 F. Supp. 288, 290–91 (S.D.N.Y. 1992) (abstaining from resolving case in which "constitutional and federal law issues in this case turn on the interpretation of New York law regulating gambling" in light of "related state proceedings").

same questions of state law were the subject of parallel "proceedings pending in the state supreme court" at the time *Burford* abstention was raised. *Id.* at 731 (Luttig, J., concurring in judgment). Moreover, the Fourth Circuit expressly relied on the fact that the District Court had, in its view, "commandeered South Carolina's enforcement efforts" by invoking its "inherent equitable power" in granting sweeping relief not authorized by statute. *Id.* at 723, 726 (majority op.).

This case is markedly different. There are no ongoing state proceedings. It is in federal court based on diversity jurisdiction, not federal question jurisdiction. Unlike *Johnson*, it does not concern claims that must be brought in a specific state tribunal.[7] Also unlike *Johnson*, where federal jurisdiction hinged on state law predicates underlying a federal RICO claim, here, diverse Defendants removed a consumer protection case. As the Fourth Circuit has made clear: *Burford* abstention is only applicable "when the claim is really 'state law in federal law clothing.'" *MLC Auto.*, 532 F.3d at 282 (citation omitted). That concern is wholly absent here and *Johnson* did not create a bright-line rule that all gaming disputes belong in state court. Indeed, this case reflects the core purpose of diversity jurisdiction: to afford out-of-state defendants access to a neutral federal forum in disputes involving substantial sums.

C.    ***Burford* Does Not Apply Simply Because the Case Involves a Regulated Industry.**

Courts have likewise rejected abstention in cases involving gaming regulations where no disruption to a state licensing scheme was at issue. As discussed, unlike the bright-line rule advanced by the City, *Martin* makes clear that *Johnson* does not require abstention in every case involving gaming even though gaming is a highly regulated industry in states where it is

---

[7] South Carolina law established separate administrative tribunals with "appellate jurisdiction over [Department of Revenue] license denials and revocations." *Johnson*, 199 F.3d at 716.

legalized.  In contrast, the *Martin* court noted that abstention was proper in *Johnson* only because "federal adjudication there would require a federal court to answer disputed questions of state gaming law," and because "the relief sought would effectively establish parallel federal and state oversight of the state video poker industry."  *Martin*, 499 F.3d at 369 (cleaned up).

The Fourth Circuit reiterated this narrow view in *Country Vintner of North Carolina LLC v. E&J Gallo Winery, Inc.*, 461 Fed. App'x 302 (4th Cir. 2012), affirming the district court's refusal to abstain in a case involving alleged violations of North Carolina's Wine Distribution Agreements Act.  There, the court held that abstention was unwarranted because the statute at issue "was unambiguous," the case involved no constitutional issues, and interpreting the law would not "unduly intrude upon complex [on] state administrative processes or disrupt state efforts to establish a coherent [state] polic[ies]."  *Id.* at 305 (cleaned up).  That case, like this one, involved a clear statutory framework with no ongoing state proceedings—factors that weigh strongly against abstention.

The District of Maryland similarly refused to abstain in *Chambers v. King Buick GMC, LLC*, in a case where the plaintiffs brought claims in federal court under a state statute requiring that sellers of vehicles disclose "clearly and conspicuously that the vehicles they purchased were previously used as short-term rentals."  43 F. Supp. 3d 575, 584 (D. Md. 2014) (quotation marks omitted).  The *Chambers* defendants sought abstention under *Burford*, arguing that the State had a "strong interest in having the issues decided in state court," especially considering the Maryland legislature had "set forth a comprehensive scheme with detailed provisions regulating the sale of automobiles, which requires restrictive licensing from the state in order to do business."  *Id.* at 608 (citation omitted).  As in *Martin*, the court rejected the bright-line rule advanced by the City.  The court noted that defendants failed to "identify difficult questions of

15

state law whose importance transcends the results of the case at bar." *Id.* at 609. And it reiterated that "the mere presence of a complex state or local regulatory scheme does not mandate abstention." *Id.* As the defendants had not identified "how federal review would disrupt Maryland's efforts to establish a coherent policy concerning a matter of substantial public concern," abstention was inapplicable. *Id.*

The rationale articulated in *Murray*, *Martin*, *Country Vintner*, and *Chambers* cuts decisively against abstention here. Even if *Burford* could be extended to disputes without underlying administrative agency proceedings (it should not), the City's CPO claim does not implicate any question of unsettled state law, technical gaming regulation, or risk of parallel federal and state oversight. Nor does the fact that Maryland has established a sports betting regulatory body mean abstention is appropriate (the presence of gaming regulators in *Martin* and alcohol regulators in *Country Vintner* similarly did not mandate abstention).

The City brings a stand-alone consumer protection claim based on alleged deceptive practices—claims that federal courts are fully equipped to resolve under well-settled state law, and that do not risk upsetting any concurrent regulatory process or related policy. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996) (explaining that the state's "interest[s] in having these issues decided in state court" is weakened when "the relevant state law is not problematic or difficult to apply"); *McGee v. Cole*, 993 F. Supp. 2d 639, 647 (S.D.W. Va. 2014) ("[T]his case does not present difficult questions of state law, and therefore fails to satisfy the first possible ground for *Burford* abstention."); *Courthouse News Serv.*, 2022 WL 17850125, at *24 (that the state had "spent years carefully establishing the administrative procedures that govern [the statute under which the claim was brought]" was of no consequence, since the plaintiff "d[id] not seek to overhaul [that administrative process]," nor did that issue "concern

complex state administrative processes") (quotation marks omitted).  The City has failed to satisfy the extraordinarily high burden for *Burford* abstention.

## III.    THE CITY ASSERTS STRAIGHTFORWARD CONSUMER PROTECTION CLAIMS THAT DO NOT WARRANT *BURFORD* ABSTENTION.

Even if *Burford* could be applied more generally, the City's claims are categorically dissimilar from those courts have found to support abstention.  As noted, the City asserts standard consumer protection allegations, alleging—incorrectly—that Defendants engaged in deceptive advertising and unfair business practices.  These types of allegations are routinely litigated in federal court, including in other cases against these same Defendants, and are far removed from the "difficult questions of state law" required to abstain under *Burford*.  *See, e.g.*, *Beyer, et al. v. DraftKings, Inc., et al.*, No. 1:25-cv-01336 (N.D. Ill. 2025) (case removed to federal court, alleging violations of consumer protection statute).

The Complaint identifies eight allegedly "deceptive and unfair" practices, including "the misleading use of betting inducements like so-called 'bonus bets' or 'no-sweat bets,'" "[d]eploying push notifications, emails, and in-app messages with misleading urgency," and "[o]ffering escalating rewards through . . . VIP programs directly proportional to gambling losses."  Compl. ¶ 111.  The City's legal theory centers on whether Defendants' conduct "injures consumers" and "violates established public policy."  *Id.* ¶ 109.

The City contends that the application of a consumer protection statute to defendants within a regulated industry is "precisely the type" of matter "federal courts should leave to state tribunals."  (Motion at 1.)  Such a rule would undoubtedly surprise many litigants and upend the longstanding practices of many federal courts.  This Court routinely adjudicates MCPA claims even when they touch on industries subject to extensive statewide and federal regulation.  *See,*

*e.g.*, *Ramirez v. LVNV Funding*, No. 24-cv-2335-ABA, 2025 WL 1665388, at *1 (D. Md. June 12, 2025) (dismissing MCPA claim against credit reporting agencies).[8]

The fact that the City's claim invokes its MCPA-analogue and "require[s] interpretation of its Consumer Protection Ordinance" is not sufficient to constitute a "difficult question," as that would be true in every case arising under the MCPA.  *See Chambers*, 43 F. Supp. 3d at 609 ("the mere presence of a complex state or local regulatory schedule does not mandate abstention."); *see also Pulte Home Corp. v. Montgomery Cnty., Md.*, No. GJH-14-3955, 2015 WL 4430588, at * 4 (D. Md. July 17, 2015) (denying motion to abstain under *Burford* because case did not involve disputed questions of state law even though claims "requir[ed] reference to Maryland land use law"); *Town of Nags Head*, 728 F.3d at 397–98 (reversing district court's decision to abstain under *Burford* because the state law at issue was "clear").  In short, the City's invocation of the CPO, and, by extension, the MCPA, does not create a "difficult" legal question nor implicate a comprehensive regulatory scheme in a way that would justify federal abstention. This case belongs in federal court.

## CONCLUSION

For the reasons stated above, Defendants request that the Court deny the City's motion to remand.

---

[8] *See also Shelton v. Klima, Peters & Daly P.A.*, No. DLB-24-1068, 2025 WL 1311731, at *1 (D. Md. May 6, 2025) (dismissing MCPA claim against financial institution); *Webb v. Carrington Mortg. Servs. LLC*, No. SAG-24-1950, 2025 WL 213950, at *11 (D. Md. Jan. 16, 2025) (analyzing MCPA claim arising from debt collection conduct regulated by the Maryland Fair Housing Act and Consumer Debt Collection Act); *Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 715 (D. Md. 2020) (rejecting MCPA claim arising from drug pricing dispute); *Ayres v. Ocwen Loan servicing, LLC*, 129 F. Supp. 3d 249, 270–71 (D. Md. 2015) (rejecting MCPA claim against loan servicer).

## REQUEST FOR HEARING

Defendants respectfully request under Local Rule 105.6 that the Court set this matter for

a hearing.

Dated:  July 7, 2025                                        Respectfully Submitted,

**COBLENTZ PATCH DUFFY & BASS LLP**

*/s/ Richard R. Patch***

Richard R. Patch*
Clifford E. Yin*
Christopher J. Wiener*
Sarah E. Peterson*
One Montgomery Street, Suite 3000
San Francisco, California 94104
Telephone: (415) 391-4800
ef-rrp@cpdb.com
ef-cey@cpdb.com
ef-cjw@cpdb.com
ef-sep@cpdb.com

*Admitted pro hac vice*

***Signed by Tonya Kelly Cronin with permission of Richard R. Patch*

**BAKER, DONELSON, BEARMAN, CALDWELL, & BERKOWITZ, PC**

*/s/ Ty Kelly*

Ty Kelly Cronin (Bar No. 27166)
Alison C. Schurick (Bar No. 19770)
Michael A. Brown (Bar No. 20814)
100 Light Street, 19th Floor
Baltimore, MD 21202
Telephone: (410) 862-1134
tykelly@bakerdonelson.com
aschurick@bakerdonelson.com
mbrown@bakerdonelson.com

***Attorneys for DraftKings Inc.***

_/s/ Gary M. Rubman_**
Gary M. Rubman*
Phyllis A. Jones*
Andrew P. Stanner*
Amber M. Charles*
Nicole Agama (Bar No. 31615)
COVINGTON AND BURLING, LLP
One CityCenter
850 10th Street NW
Washington, D.C., 20001
(202) 662-6000
mimbroscio@cov.com
pajones@cov.com
grubman@cov.com
astanner@cov.com
acharles@cov.com

*Admitted pro hac vice

*Signed by Tonya Kelly Cronin with
permission of Gary M. Rubman

**Attorneys for Flutter Entertainment plc**

## CERTIFICATE OF SERVICE

I certify that on July 7, 2025, I electronically filed the foregoing document (including exhibits) via CM/ECF, and that the foregoing document was served upon the following person(s) via email and Certified Mail:

Ebony M. Thompson
City Solicitor
Sara Gross
Chief, Affirmative Litigation Division
Thomas P.G. Webb
Deputy Chief, Affirmative Litigation
Division
**BALTIMORE CITY LAW**
**DEPARTMENT**
City Hall, Room 101
100 North Holliday Street
Baltimore, Maryland 21202
ebony.thompson@baltimorecity.gov
sara.gross@baltimorecity.gov
thomas.webb@baltimorecity.gov

Adam J. Levitt
Daniel R. Schwartz
Daniel R. Ferri
Eaghan Davis
Rebecca Trickey
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
alevitt@dicellolevitt.com
dschwartz@dicellolevitt.com
dferri@dicellolevitt.com
edavis@dicellolevitt.com
rtrickey@dicellolevitt.com

*Attorneys for Plaintiff*

/s/ *Ty Kelly*___
Tonya Kelly Cronin

21